POSTED ON WEB SITE

THIS DECISION IS NOT FOR PUBLICATION OR CITATION



FILED

SEP 2 5 2006

KS

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re                                    Case No. 05-18746-A-7
                                         DC No. WLG-2
GOLDEN EMPIRE AIR RESCUE, INC.

                    Debtor.
_____/

In re                                    Case No. 05-19955-A-7
                                         DC No. WLG-2
GOLDEN EMPIRE AMBULANCE, INC.

                    Debtor.
_____/

FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING MOTIONS FOR AUTHORITY TO COMPROMISE

     The chapter 7 trustees in Golden Empire Ambulance, Inc.
("GEA") and Golden Empire Air Rescue, Inc. ("GEAR") have moved
the court to approve compromises they have entered into with
Rogers Helicopter, Inc. ("Rogers"). Peter Mosesian ("Mosesian")
opposed the motions. Hearings were held on August 30, 2006,
following which the court took the motions under submission.[1]
This memorandum contains findings of fact and conclusions of law

_____

[1] Rogers filed a Further Brief on August 24, 2006. Mosesian
moved to strike it as not in compliance with the court's
scheduling order, and sought sanctions. The motion to strike
will be granted. The request for sanctions will be denied.

1

118

1  required by Federal Rule of Bankruptcy Procedure 7052 and Federal

2  Rule of Civil Procedure 52.   This is a core proceeding as defined

3  in 28 U.S.C. §157(b)(2)(A) and (O).

4  <u>The legal requirements for approval of compromises.</u>

5      Federal Rule of Bankruptcy Procedure 9019(a) states "on

6  motion by the trustee and after notice and a hearing, the court

7  may approve a compromise or settlement."   The Ninth Circuit Court

8  of Appeals has outlined the factors a bankruptcy court should

9  consider in deciding whether to approve a settlement.   <u>In re</u>

10 <u>Woodson</u>, 839 F.2d 610 (1988); <u>In re A & C Properties</u>, 784 F.2d

11 1377 (1986).   Although the <u>A & C Properties</u> case was decided

12 under the Bankruptcy Act of 1898, its reasoning is still

13 applicable to the Bankruptcy Code that governs these cases.

14     Although a bankruptcy court has great latitude in approving

15 compromises, its discretion is not unlimited.   The court may

16 approve a compromise only when that compromise is "fair and

17 equitable."   <u>In re Woodson</u> at 620; <u>In re A & C Properties</u> at

18 1380-81.   The moving party has the burden of persuading the

19 bankruptcy court that the compromise is fair and equitable and

20 that the court should approve it.   <u>In re A & C Properties</u> at

21 1381.

22     The two decisions agree that in determining whether a

23 compromise is fair and equitable, a bankruptcy court must

24 consider four factors.   These factors are:

25     (a) The probability of success in the litigation;

26     (b) The difficulties, if any, to be encountered in the
    matter of collection;

27

28     (c) The complexity of the litigation involved, and the
    expense, inconvenience and delay necessarily attending it;

2

[and]

(d) The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

While the bankruptcy court should give "due deference" to objections by creditors, such objections are not controlling. <u>In re A & C Properties</u> at 1832.

In deciding whether to approve a proposed compromise, a bankruptcy court should not substitute its judgment for that of the trustee as the settling party. <u>In re 110 Beaver Street Partnership</u>, 244 B.R. 185, 187 (Bankr. D. Mass. 2000). That Massachusetts bankruptcy court phrased the court's job as follows:

"In sum, the Court will defer to the trustee's judgment and approve the compromise, provided the trustee demonstrates that the proposed compromise falls within the 'range of reasonableness' and thus is not an abuse of his or her discretion."

<u>Id.</u>

<u>The Settlement Agreement.</u>

The Settlement Agreement here is between the chapter 7 trustees of each estate and Rogers. The Recitals portion of the Settlement Agreement describes the events that led to this motion and to other contested and litigated matters in this court. Those facts will be repeated here briefly as necessary.

Rogers is the plaintiff in a Kern County Superior Court action (the "Kern County Action"), and GEA, GEAR, Mosesian, and John Penrose are defendants. Mosesian caused the Kern County Action to be removed to bankruptcy court after the two chapter 7 cases were filed. This court ordered the Kern County Action remanded to Kern County Superior Court upon Rogers' motion.

3

1   Rogers filed a motion for relief from stay to allow the Kern
2   County Action to proceed, which motion the court has granted.
3       Mosesian prepared a "Settlement Agreement" before the two
4   chapter 7 cases were filed (the "Mosesian Settlement Agreement").
5   Under the Mosesian Settlement Agreement, Mosesian agreed to pay
6   the two chapter 7 estates $145,000 if certain conditions were
7   met.   These conditions included the dismissal of the Kern County
8   Action against Mosesian and Penrose and a finding by a court of
9   competent jurisdiction that all causes of action of GEA, GEAR and
10  Rogers against Mosesian and Penrose were settled and resolved
11  upon the payment of the $145,000.
12      Mosesian, as plaintiff, also filed an adversary proceeding
13  in each of the two chapter 7 cases seeking declaratory relief
14  that all causes of action based on alter ego or any claim
15  asserted in the Kern County Action against Mosesian and Penrose
16  were property of the two bankruptcy estates and were thereby
17  settled upon the payment of $145,000.   The defendants in those
18  adversary actions filed motions to dismiss, which the court has
19  granted without leave to amend.
20      GEA and GEAR on the one hand and Rogers on the other hand
21  were two joint venture partners in RAGE.   RAGE operated an air
22  ambulance service in Kern County.   Rogers filed the Kern County
23  Action in 2002 seeking a partnership accounting and alleging
24  fraud, breach of fiduciary duty, and conversion by all
25  defendants.   The Kern County Action was bifurcated with a trial
26  on the partnership accounting taking place in December 2003.   The
27  trial resulted in a determination that GEA and GEAR were
28  obligated to Rogers based only on the partnership accounting in

4

an amount of over $700,000.  The remaining issue in the Kern

County Action is the liability of Mosesian and Penrose.  Rogers

alleges that it has the exclusive right to all causes of action

to pursue Mosesian, Penrose, and other entities related to GEA

and GEAR for their actions involving RAGE, GEA, and GEAR.  The

chapter 7 trustees assert that GEA and GEAR have certain causes

of action that belong exclusively to the chapter 7 estates.

Therefore, the Settlement Agreement states at Recital H

that:

> "A dispute exists between [Rogers] and the Chapter 7 estates
> of GEA and GEAR over the appropriate plaintiff to pursue all
> of the causes of action against Peter Mosesian and John
> Penrose.  Rather than expend judicial resources and estate
> funds, the parties to this Settlement Agreement have agreed
> to resolve their dispute upon the terms and conditions set
> forth below.  The parties believe that the two adversary
> proceedings filed by Peter Mosesian will be dismissed and
> chose by this agreement to resolve all issues between
> [Rogers] and the two Chapter 7 estates."

Under the Settlement Agreement, Rogers is to pay $30,000 to

each of the chapter 7 estates within ten days of entry of an

order approving the Settlement Agreement.  Also, Rogers agrees to

assign five percent (5%) of the gross recovery from any judgment

in the Kern County Action to the two chapter 7 estates to be

divided equally between them.  The $30,000 is a nonrefundable

deposit on the 5% of the gross recovery.

The Settlement Agreement goes on to say:

> "The parties agree that except for a cause of action arising
> only as a result of the filing of the two chapter 7 cases,
> all other possible causes of action against Peter Mosesian,
> John Penrose and any other entities related to GEA and GEAR
> or related to or controlled by Peter Mosesian and John
> Penrose are particular to [Rogers] and the two estates do
> not have any right, title or interest in such causes of
> action. . . ."

1  However, the Settlement Agreement makes it clear that causes of
2  action that arose upon the filing and as a result of the
3  bankruptcy cases such as preferential or fraudulent transfers are
4  general causes of action belonging to the two bankruptcy estates.

5       The only party objecting to this agreement is Mosesian.
6  Peter Mosesian has filed timely proofs of claim in each case.
7  Therefore, he has standing to object to the court approving the
8  Settlement Agreement.

9       In support of the motion in each case, the trustees have
10 filed declarations of the trustees and excerpts of the transcript
11 of the 341(a) meetings of creditors in each case.  Rogers has
12 also filed a brief and a request for judicial notice in support
13 of the motion in each case.

14      According to Mosesian, the court does not have enough facts
15 to enable it to make a reasoned decision that the compromise is
16 in the best interest of each bankruptcy estate.  He says that the
17 trustees have failed to evaluate what they are likely to recover
18 above and beyond the initial cash payment.  Therefore, according
19 to Mosesian, the court cannot evaluate the reasonableness of the
20 settlement.

21      Also, Mosesian says that this is really a sale and as such
22 other bidders should be allowed.  Mosesian also argues that the
23 Settlement Agreement includes a sale of avoidance rights.  (The
24 Settlement Agreement itself says otherwise.)

25 Analysis.

26      In granting the motions to dismiss the adversary proceedings
27 that Mosesian filed in these cases, the court concluded that the
28 claims for relief asserted in the Kern County Action are claims

6

that do not belong to the bankruptcy estates.  The court has,
therefore, already concluded that the probability of the
trustee's succeeding in arguing that the claims do belong to the
estate is low.  This court has already ruled that the claims do
not belong to the estate.  It is, of course, always possible that
a state court would come to a different conclusion.  Nonetheless,
the first factor is met.  The trustees have a low probability of
success in litigation over who owns the causes of action.

The second factor is the difficulties to be encountered in
the matter of collection.  This factor does not appear relevant
here.  Rogers has already paid the cash down payment.  The
trustees can monitor the Kern County Action and take appropriate
steps to collect their share.  If Rogers prevails in the Kern
County Action, the trustees will be able to obtain any amount to
which they are entitled.

The next factor is the complexity of the litigation
involved.  Again, this court has already ruled that the claims in
question belong to Rogers and not to the bankruptcy estates.  In
the court's findings of fact and conclusions of law in those
adversary proceedings, the court observed that litigation about
alter ego claims is complex.  Certainly, if the trustees were to
litigate this matter in the Kern County Superior Court, one could
expect it to continue to be complex.

Finally, the court must consider the paramount interest of
the creditors.  Both Rogers and Mosesian are not simply
creditors.  They each have litigation interests in this matter.
Both wish to use the bankruptcy court proceedings to gain an
advantage in the Kern County Action.

7

1    For the foregoing reasons, the motions to approve the

2  settlement agreement will be granted.  Counsel for the trustees

3  in the respective cases may submit appropriate forms of orders.

4  DATED: September 25, 2006

6

7                              WHITNEY RIMEL, Judge
                               United States Bankruptcy Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA      )
                         )  ss.
COUNTY OF FRESNO         )

    I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within above-entitled action; my business address is 2656 U.S. Courthouse, 1130 O Street, Fresno, California, 93721. On September 25, 2006, I served the within document on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Fresno, California, addressed as follows:

Justin D. Harris, Esq.
WALTER LAW GROUP
7110 North Fresno Street, Suite 400
Fresno, CA 93720

Michael T. Hertz, Esq.
LANG, RICHERT & PATCH
P. O. Box 40012
Fresno, CA 93755-0012

Hilton A. Ryder, Esq.
McCORMICK, BARSTOW, SHEPPARD,
   WAYTE & CARRUTH
P. O. Box 28912
5 River Park Place East
Fresno, Ca 93720-1501

Estela O. Pino, Esq.
PINO & ASSOCIATES
4600 Northgate Boulevard, Suite 215
Sacramento, CA 95834

    I certify (or declare), under penalty of perjury, that the foregoing is true and correct.  Executed on September 25, 2006, at Fresno, California.

_____
Kathy Torres, PLS

9